UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| REGINALD ROBINSON and CYNTHIA ROBINSON,<br><br>        Plaintiffs<br><br>vs.<br><br>LIBERTY MUTUAL INSURANCE CO.,<br><br>        Defendant | CASE NO. CV03-HGD-3355-S |

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant. (Doc. #6). This matter is before the undersigned United States Magistrate Judge upon the consent of both parties in accordance with the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. This action was filed initially on or about October 28, 2003, in the Circuit Court of Jefferson County, Alabama. It was removed to federal court by defendant based on 28 U.S.C. §§ 1332 and 1441(a) on December 22, 2003.

### FACTUAL BACKGROUND

The material facts in this case are not in dispute. This case arises out of a dispute regarding the cost of repairing plaintiffs' home after it was damaged by a fire on November 24, 2002. In Count One of their complaint, plaintiffs allege that Liberty Mutual breached a fire insurance policy covering the home by refusing to pay amounts due under that policy. In Count Two, the Robinsons assert that defendant is liable for a laundry list of bad

acts including bad faith, outrage, and negligence for refusing to pay the full amount of their claim. (Doc. #1, Exh. A, Complaint).

Plaintiffs obtained a fire insurance policy from defendant on April 30, 2002, insuring their home located at 8472 Carrington Lakes Cove, Trussville, Alabama. (Def. Exh. 1, Compton Aff. at ¶ 2; Def. Exh. 2, Insurance Policy on 8472 Carrington Lakes Cove). On November 24, 2002, the residence was damaged by a fire. Shortly thereafter, Liberty Mutual retained the services of CRNP Restoration Management in Trussville to obtain an estimate of the damages caused by the fire. (Def. Exh. 1, Compton Aff., at ¶ 3). On or about December 5, 2002, Restoration Management issued a 40-page report in which it estimated that it would cost $190,819.70, plus overhead, tax, and profit to repair the house. (Def. Exh. 3, Repair Estimate Report, at 38). The total cost of repairs, including overhead, tax, and profit was estimated to be $239,218.58. (*Id.* at 39).

The Robinsons contended that the residence could not be repaired and that it had to be demolished because, according to them, the foundation had been damaged. (Def. Exh. 1, Compton Aff., at ¶ 4). Thereafter, on December 20, 2002, Liberty Mutual retained Carr & Associates Engineers, Inc., in Pelham, Alabama, to determine the structural integrity of the house for possible reconstruction. (*Id.*).

In a letter from Carr & Associates dated January 2, 2003, Charles Crane PE advised Liberty Mutual Loss Representative Gary Compton that "the structural damage sustained by the fire is primarily in the roof and upper level of the residence" and that it would be "economically feasible to restore this damaged residence to its original integrity, both structurally and aesthetically." (Def. Exh. 4, Letter from Carr & Associates to Liberty

Mutual dated January 2, 2003). Copies of the Restoration Management estimate and the letter from Carr & Associates were provided to the Robinsons. (Def. Exh. 1, Compton Aff., at ¶ 5).

Based on these reports, Compton calculated the amount of the Robinsons' loss to be $171,333.63, by subtracting $15,486.07 for recoverable depreciation, $3,000.00 for an advance payment already made to the Robinsons and $1,000.00 for the deductible, from the $190,819.70 estimated cost of repairs found in the Restoration Management report. He advised the Robinsons' attorney that the Robinsons could recover the amounts for depreciation, overhead, profit, and tax pursuant to the policy after the actual repairs and replacement were complete. (*Id.*; Def. Exh. 7, Letter from Gary Compton to William Bright dated March 3, 2003).

Based on this calculation, on January 24, 2003, Liberty Mutual paid the Robinsons $171,333.63 for repairs and $46,821.78 for personal property lost in the fire. On February 3, 2003, the Robinsons' attorney demanded that Liberty Mutual pay his clients the policy limits for personal property in the amount of $307,275.00 and for the dwelling in the amount of $409,700.00. (Def. Exh. 5, Letter from William Bright to Gary Compton dated February 3, 2003). Thereafter, on March 3, 2003, Compton wrote a letter to the Robinsons' attorney explaining how Liberty Mutual calculated the $171,333.63 amount. (Def. Exh. 7, Letter from Gary Compton to William Bright dated March 3, 2003). Liberty Mutual asserts it also has paid the Robinsons approximately $14,952.68 in housing and other miscellaneous expenses and, in June 2003, after receiving additional documentation, paid an additional $8,361.78 for personal property lost in the fire. (Def. Exh. 1, Compton Aff., at ¶ 6, n.4).

On March 13, 2003, counsel for the Robinsons wrote a letter to Compton stating that, within the next two weeks, plaintiffs would provide two appraisals for reconstruction to Liberty Mutual. In contrast with the 40-page report provided to Liberty Mutual by Restoration Management, the first such appraisal provided by plaintiffs is a one-page statement from Heartland Builders which simply states, without elaboration:

    ESTIMATE FROM ORIGINAL PLANS    $241,500

    DEMOLITION    15,000

    TOTAL WITH LANDSCAPING    265,500.00

(Def. Exh. 6).

The other appraisal is also a one-page statement from Kennemur Contracting, Inc., which states, also without elaboration:

    LABOR AND MATERIAL FOR 8473 CARRINGTON LAKES

    COVE TRUSSVILLE, AL. 295.351.00

    EDDIE KENNEMUR
    655-4854 HM.
    907-1672 MOBIL
    655-3753 FAX

(Pla. Exh. 14).

On April 24, 2003, the Robinsons' attorney wrote Compton requesting that Liberty Mutual continue paying the Robinsons' living expenses for an additional three months after May 2003 because "this matter is still in negotiation." (Def. Exh 1, Compton Aff., at ¶ 9). On April 29, 2003, Compton wrote a letter to the Robinsons' attorney declining to reimburse

the Robinsons for living expenses beyond May 2003, in part because Compton understood that the Robinsons had not begun making any repairs to their house as required by their policy. (Pla. Exh. 8, Letter from Gary Compton to William Bright dated April 29, 2003).[1] Compton also acknowledged that he recently had received two estimates for repairs to the Robinsons' home but that the estimates were not broken down properly regarding the repairs necessary to complete this project. Therefore, these estimates were unacceptable to Liberty Mutual. (*Id.*).

On June 4, 2003, the Robinsons' attorney advised Compton that he planned to file a lawsuit against Liberty Mutual by the end of the month. (Def. Exh. 1, Compton Aff., at ¶ 10). By letter dated June 6, 2003, Compton advised the Robinsons' attorney that Liberty Mutual was invoking the policy's appraisal provision and informed him that Liberty Mutual had selected Mike Mullis of White-Hart & Associates to serve as its appraiser. (*Id.*; Pla. Exh. 9). The applicable policy provision states, in SECTION I-CONDITIONS:

> 6.  Appraisal. If you and we fail to agree on the amount of loss. In this event each party will choose a competent appraiser

---

[1] The policy conditions provide:

> **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:
>
> * * *
>
> d.  Protect the property from further damage. If repairs to the property are required, you must:
>
>     (1) Make reasonable and necessary repairs to protect the property; and
>     (2) Keep an accurate record of repair expenses; . . .

(Def. Exh. 2, Insurance Policy, at 8).

>           within 20 days after receiving a written request from the other.
>           The two appraisers will choose an umpire. If they cannot agree
>           upon an umpire within 15 days, you or we may request the
>           choice be made by a judge of a court of record in the state where
>           the "residence premises" is located. The appraisers will
>           separately set the amount of the loss. If the appraisers submit a
>           written report of an agreement to us, the amount agreed upon
>           will be the amount of loss. If they fail to agree, they will submit
>           their difference to the umpire. A decision agreed to by any two
>           will set the amount of loss.
>
>           Each party will:
>
>                a. Pay its own appraiser, and
>                b. Bear the other expenses of the appraisal umpire
>                   equally.

(Def. Exh. 2, Insurance Policy, at 10).

On June 18, 2003, the Robinsons appointed Carla Bailey, a real estate agent, as their appraiser. On June 30, 2003, Liberty Mutual provided Bailey with a list of potential umpires. Compton learned on or about July 8, 2003, that the Robinsons' appraiser had resigned. (Def. Exh. 1, Compton Aff., at ¶ 11). In the meantime, and unknown to Compton and Liberty Mutual, the Robinsons received a letter dated June 20, 2003, from Joe P. Duncan, Supervisor of Engineering and Inspection Services for the City of Trussville, stating that he had inspected the property on June 18, 2003, and had decided that it was a substantial loss and not reparable. Duncan concluded that the house needed to be demolished. He further stated that it would appear that some of the structure would be salvageable but the existing water damage and now mold and mildew growth would make that impractical. (Def. Exh. 8, Letter from Joe Duncan to the Robinsons dated June 20, 2003). The letter gave no deadline for

carrying out the demolition and concluded stating, "If you have any questions regarding my decision I will be happy to discuss them with you." (*Id.*).

On or about July 18, 2003, the Robinsons appointed a second appraiser, D. W. Shelton. On or about July 21, 2003, Liberty Mutual's appraiser provided Shelton with a list of potential umpires. Shelton never provided Liberty Mutual with a list of potential umpires. (Def. Exh. 1, Compton Aff., at ¶ 12).[2]

On August 8, 2003, Compton learned from his appraiser that the residence had been demolished. The Robinsons did not give any notice to Liberty Mutual of their intention to demolish the home. (*Id.* at 13).

By letter dated August 6, 2003, Compton advised the Robinsons' attorney that the demolition of the residence by the Robinsons had prejudiced Liberty Mutual's right to appraisal under the policy. Therefore, he advised that Liberty Mutual would stand by its original building estimate provided by Restoration Management. (Pla. Exh. 11, Letter from Gary Compton to William Bright dated August 15, 2003).

---

[2] Reginald Robinson states in his affidavit that he made every effort to find an appraiser but was unable to do so prior to the order from the City of Trussville to have the house demolished. (Pla. Exh.1, Reginald Robinson Aff., at ¶ 2). However, the Robinsons' attorney, consistent with the affidavit of Gary Compton, states in plaintiffs' brief that "in an attempt to comply with the 'appraiser provision,' the Robinsons appointed Carl Bailey on June 18, 2003, as their appraiser." (Doc. #13, Plaintiffs' Opposition to Motion for Summary Judgment, at ¶ 14). He further states that, on July 8, 2003, the Robinsons were informed that Carl Bailey had resigned, (*id.* at ¶ 16), and that, on July 18, 2003, the Robinsons appointed a second appraiser, D. W. Shelton. (*Id.* at ¶ 17). Thus, Reginald Robinson's statement is taken to mean that he was unable to get an appraiser prior to the June 18, 2003, inspection of the residence by Joe Duncan, but that this was eventually accomplished in the manner alleged by both Gary Compton and counsel for the Robinsons as set forth above.

By letter dated August 26, 2003, counsel for the Robinsons sent Compton a copy of the letter from Joe Duncan stating that the house needed to be demolished because it was not reparable. He further stated that "since your company has failed and refused to do the appraisals as per the policy provisions, we are notifying you that we are holding you in breach of contract and in the event you do not proceed with the appraisal per the contract we will have no alternative but to file suit as originally planned." (Pla. Exh. 12, Letter from William Bright to Gary Compton dated August 26, 2003).

Compton responded to this letter by letter dated September 16, 2003, denying that Liberty Mutual failed or refused to proceed with the appraisal. He further noted that the letter from Joe Duncan did not mention a specific deadline for the demolition of the house and that, therefore, the Robinsons were not under any time constraints to undertake the demolition. Compton also stated that he believed that the Robinsons had ample time to obtain an appraiser and that common sense dictated that a proper appraisal could not be undertaken because the house had been demolished. (Pla. Exh. 13, Letter from Gary Compton to William Bright dated September 16, 2003).

## DISCUSSION

Summary Judgment Standard

This matter is considered by the court pursuant to the provisions of Rule 56, Fed. R. Civ. P. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Id*. at 255, 106 S.Ct. at

2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). It is, therefore, under this standard that the court must determine whether the plaintiffs can meet their burden of coming forward with sufficient evidence as to each material element of their claims sufficient to permit a reasonable jury to find in their favor.

*Count One*

In Count One of their complaint, plaintiffs allege that Liberty Mutual breached a fire insurance policy covering their home by refusing to pay amounts due under that policy. Defendant asserts that summary judgment should be granted in its favor and plaintiffs' claims should be dismissed due to their failure to comply with the appraisal provision in the policy.

The clear and unambiguous language of the "appraisal provision" located in the "Conditions" section of plaintiffs' insurance policy provides that, when the parties cannot agree on the amount of the loss, either side may demand an appraisal to set the amount of the loss.

According to Restatement (First) of the Law of Contracts § 250, a "condition precedent" is "a fact (other than mere lapse of time), unless excused as stated in §§ 294-307, . . . which must exist or occur before a duty of immediate performance of a promise arises." Whether a provision in a contract is a condition precedent depends not upon formal words, but upon the intent of the parties to be determined from the whole instrument. *Central Reserve Life Insurance Co. v. Fox*, 869 So.2d 1124, 1127 (Ala. 2003). The provision at issue here is a part of the contract which is mandatory in nature. Either party can "demand" an appraisal if the amount of loss cannot be agreed upon. Once the procedure set out is

followed, the resulting price sets the amount of the loss for both parties. Obviously, an insurance company cannot be held liable for failure to pay an amount due under a policy until that amount is determined under the terms of the policy. Thus, this "condition" is a condition precedent to an action for failure to pay the loss amount due under the policy.

Ordinarily, failure to comply with a condition precedent prevents an action by the defaulting party to enforce the contract. *Fox*, 869 So.2d at 1127. According to defendant, many courts have dismissed or granted summary judgment as to claims indistinguishable from the ones made in this lawsuit due to a plaintiff's failure to comply with an insurance policy's appraisal provision. In *Hardware Dealers' Mutual Fire Ins. Co. of Wisconsin v. Glidden Co.*, 284 U.S. 151, 52 S.Ct. 69, 76 L.Ed. 214 (1931), the United States Supreme Court considered the enforcibility of a Minnesota statute which required a similar process to determine a disputed loss amount. In holding the statute did not violate the due process and equal protection clauses of the Fourteenth Amendment to the U.S. Constitution, the Court stated "[t]his type of arbitration clause has long been commonly used in fire insurance policies, both in Minnesota and elsewhere, and, when voluntarily placed in the insurance contract, compliance with its provisions has been held to be a condition precedent to an action on the policy." (citing *Gasser v. Sun Fire Office*, 42 Minn. 315, 44 N.W. 252 (1890); *Hamilton v. Liverpool & London & Globe Ins. Co.*, 136 U.S. 242, 10 S.Ct. 945, 34 L.Ed. 419 (1890); *Scott v. Avery*, 5 House of Lords, 811, 854; *Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 121, 44 S.Ct. 274, 68 L.Ed. 582 (1924)).

In *Hamilton*, *supra*, the plaintiff sued his insurance company after a dispute arose as to the value of a shipment of tobacco that had been damaged by fire. The defendant

insurance company invoked the insurance policy's appraisal provision. However, before the appraisal process could begin, the plaintiff sold the tobacco that was in dispute. 136 U.S. at 256, 10 S.Ct. at 950. The Supreme Court found that by selling the property at issue in the appraisal, the plaintiff had "deprive[d] the defendant of the right, reserved to it by the policy, of taking the property at its appraised value, when ascertained in accordance with the conditions of the policy." *Id.*

In *Ex parte Birmingham Fire Ins. Co.*, 233 Ala. 370, 172 So. 99 (1937), a dispute arose as to the amount of loss of "certain property" damaged in a fire. The insurer invoked the policy's appraisal provision, but the insured refused to allow an examination of the property by the appraisers. The Alabama Supreme Court stated:

> [I]f the insured has wrongfully prevented an award from being made and published, or that he has withdrawn from the arbitration and brought suit on the policy, before securing an award on the arbitration, without any fault on the part of the insurer, such action or actions on the part of the insured would be a bar to the action brought by the insured upon the policy.

172 So. at 102. In a similar matter, the Alabama Supreme Court also held that:

> Where the parties, in their contract, fix on a certain mode by which the amount to be paid shall be ascertained, as in the present case, the party that seeks an enforcement of the agreement must show that he has done everything on his part which could be done to carry it into effect. He cannot compel the payment of the amount claimed, unless he shall procure the kind of evidence required by the contract or show that by time or accident, he is unable to do so.

*Western Assur. Co. v. Hall*, 112 Ala. 318, 20 So. 447, 449 (1896).

Although these cases are quite old, the United States Supreme Court and the Alabama Supreme Court have found that a plaintiff who prevents an insurance appraisal from going

forward is barred from suing the insurance policy. There is no indication that these cases have been overruled by subsequent rulings or statutory enactments.

Plaintiffs assert that they did everything possible to comply with the provisions of the insurance policy. They further assert that they made a demand for the policy limits and that Liberty Mutual made no effort to exercise the appraisal provision for four months thereafter. Plaintiffs deny that they prevented the appraisal from going forward. (Doc. #13, Plaintiffs' Opposition to Motion for Summary Judgment, Argument of Law, at 4-5).

The problem with these assertions is that they simply are not supported by any evidence. While it is correct that plaintiffs demanded payment of the policy limits on February 3, 2003, it is not correct that Liberty Mutual did nothing thereafter. Upon rejection of the offer made to plaintiffs, Gary Compton wrote a letter to the Robinsons' attorney on March 3, 2003, explaining how Liberty Mutual arrived at its loss amount. Simply demanding payment of the policy limits is not an invocation of the appraisal provision of the policy. At this time, plaintiffs, as well as defendant, could have demanded an appraisal, but they did not do so. Plaintiffs' attorney did not respond to Compton's March 3 letter until April 24, 2003. On April 24, 2003, counsel for plaintiffs wrote Compton requesting another three months of living expenses from Liberty Mutual because the matter was "still in negotiation." Thus, it was by no means clear that an impasse had been reached back in February 2003.

Liberty Mutual responded to the April 24 letter by writing another letter to counsel for the Robinsons on April 29, 2003, declining to pay further living expenses. This letter was unanswered by their attorney until June 4, 2003, when he threatened to file suit. Thus, a great deal of the time that elapsed between February and June 2003 was due to the ongoing

exchange of correspondence regarding this issue, of which approximately 12 weeks was time that elapsed while Liberty Mutual awaited responses to letters written to the Robinsons' attorney (March 3 through April 24, and April 29 through June 3).

Once the appraisal provision was invoked by Liberty Mutual, plaintiffs appeared to consent to the process. They appointed an appraiser and, after that appraiser resigned, selected another. During the time after their selection of their first appraiser, they received a letter from City of Trussville Inspector Joe Duncan advising them that the house needed to be demolished. There is no evidence that plaintiffs ever contacted Duncan to advise that an appraisal process was underway, thus necessitating a delay in demolition. They also never notified Liberty Mutual of their receipt of Duncan's letter prior to the demolition of the residence. In fact, even after they received Duncan's letter, they obtained the services of a second appraiser when their first one resigned.

After giving Liberty Mutual every reason to believe that they were going to participate in the appraisal process, they then had the residence demolished. This prevented Liberty Mutual from obtaining an appraisal from their appointed appraiser. As a result, Liberty Mutual is relying on the results of the inspection report from Restoration Management in January 2003.

Despite plaintiffs' claim that they had to demolish the home, there is no evidence that the City of Trussville had set any deadline for this action. There was no "order" extant requiring the demolition, only a letter stating that it was the inspector's determination that demolition was necessary. Thus, plaintiffs' claim that they had to demolish the home based on the order of the City of Trussville is without merit.

Furthermore, by failing to advise Liberty Mutual about Duncan's letter, plaintiffs deprived it of the opportunity to address this matter with the authorities at the City of Trussville or to attempt to speed up the process with plaintiffs. In addition, the letter from Joe Duncan notes that part of the reason for his conclusion that the house should be demolished was that the house was now also suffering from mold and mildew, arguably as a result of a failure to take steps to protect it from the elements after the fire. The policy would appear to put the onus of protecting the house on plaintiffs. Thus, the destruction of the residence effectively denied Liberty Mutual the opportunity to determine what damage was due to the fire and what was due to plaintiffs' failure to take precautions required under the policy.

Plaintiffs have cited no facts and no legal authority upon which this court could base a conclusion that defendant has waived its right to invoke the appraisal provision of the insurance policy at issue. Their actions in appearing to cooperate in the appraisal process and then demolishing the residence without notice to Liberty Mutual effectively denied Liberty Mutual the opportunity to determine the loss amount under the provisions of the policy applicable when the amount offered by Liberty Mutual is disputed as insufficient. The law of the United States and of the State of Alabama appears to be long-standing and uncontradicted that plaintiffs' thwarting of the appraisal process bars them from taking action under the policy. *See Hamilton, supra*, and *Ex parte Birmingham Fire, supra.*

*Count Two*

Plaintiffs' second count essentially asserts that defendant's failure to pay them the policy limits was done in bad faith and amounted to outrageous conduct.  These claims are also without merit.  First, an insurer who pays a claim based on an estimate from an outside company cannot as a matter of law be found to have acted in bad faith.  *See Southeast Nursing Home, Inc. v. St. Paul Fire and Marine Ins. Co.*, 750 F.2d 1531, 1538-39 (11th Cir. 1985).  Second, because plaintiffs are barred from suing under the insurance policy because of their own actions in thwarting the appraisal process, their own failure to cooperate prevents them from pursuing such claims against Liberty Mutual.

## CONCLUSION

Based upon the foregoing, it is the opinion of this court that defendant's Motion for Summary Judgment is due to be granted.  A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 9th day of December, 2004.

                                                         _____
                                                          HARWELL G. DAVIS, III
                                                UNITED STATES MAGISTRATE JUDGE